### Russell & Company v. John McGirr et al.
### The Russell & Company v. John McGirr.
### Consolidated for Hearing.

1. VERDICT—*how may be rendered.* A verdict may be rendered either orally or in writing.

2. INSTRUCTIONS—*when assignment of error with respect to, will not be considered.* Instructions claimed to have been improperly refused will not be reviewed on appeal where the abstract does not show the instructions given.

Judgment by confession. Appeal from the County Court of Cham-

Russell & Co. v. McGirr.

paign county; the Hon. F. M. SHONKWILER, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

C. R. JUNGERICH and MANFORD SAVAGE, for appellants.

D. J. CARNES, for appellees.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

Russell & Company and The Russell & Company, two different corporations of Massillon, Ohio, having a common interest in the subject-matter involved in this proceeding, entered two judgments by confession in the Circuit Court of Champaign county against John McGirr and John H. Nelson of DeKalb county, one in the sum of $477.45 and the other for $496.40 and costs. On motion and affidavits said judgments were opened and leave given to McGirr to plead. Plea and notice of special matters in defense were filed by McGirr and the two causes were, by agreement, consolidated and submitted to a jury who found the issues in favor of McGirr. The court overruled a motion for a new trial and rendered judgment in favor of McGirr. Russell & Company and The Russell & Company appealed.

It appears from the evidence that McGirr was agent for appellants in the sale of their goods at DeKalb, Illinois, and that as such agent he, and one Beechley, also an agent or salesman of appellants, sold some machinery to Nelson for which he, Nelson, gave his promissory notes which McGirr signed (as a joint maker with Nelson as claimed by appellants, or as a guarantor as claimed by McGirr) and that said notes were secured by chattel mortgages made by Nelson to appellants; that while the chattel mortgages were in full force and during the fall of 1904, Nelson's barn was burned and a part of the property he had mortgaged to appellants, besides other property, was destroyed;

that the property burned was covered by insurance taken out by Nelson with loss payable to appellants. It also appears that soon after the fire Nelson wrote appellants advising them of the loss, and asked them "to send Beechley so they could have some kind of a settlement;" that in response to this invitation Beechley was sent to the home of Nelson, where he and Nelson made an adjustment, as claimed by Nelson, and thereupon Nelson turned over to Beechley the insurance policy which was estimated to be worth, by reason of the fire, $890, all the property not burned, covered by the chattel mortgage (except a span of mules), and a corn shredder, not covered by the chattel mortgage, and paid Beechley in cash $502. The policy of insurance was afterward duly assigned to appellants who have ever since retained the same without in any way offering to return it to either Nelson or McGirr. Soon after the time that Beechley took possession of the property he advertised a chattel mortgage sale in the name of appellants, and bid in the property in their name for the sum of $350.

The main question involved is whether or not what took place at Nelson's home, while Beechley was there, was a full and final settlement between Nelson and appellants or whether Beechley merely accepted what he got from Nelson to apply upon the indebtedness, which, as it is now accounted for by appellants, leaves a balance due upon the notes for which McGirr would be liable.

Upon a consideration of the whole evidence we are fully satisfied that the jury were warranted in finding that there was a full settlement between the parties and that McGirr was thereby released.

Nelson testified that he purchased a part of the machinery through Beechley (who was at the time at McGirr's office in DeKalb); that his barn burned in the fall of 1904, and as he had to vacate the farm he was on by the first of March following, he wrote to appellants to send Beechley there that they might settle;

that Beechley came and they figured the whole matter up; that they called the insurance policy worth $890, estimated an engine and sheller covered by the mortgage at $380 and a shredder which was not in the mortgage at $200, and that he then paid Beechley in cash $502, which was a total of $1,972.

McGirr testified that Beechley said to him, when he was on his way to Nelson's, that he had come to make a settlement with Nelson; that Beechley came back on the next day from Nelson's and said that it was fortunate for him, McGirr, that Nelson was in as good shape as he was; that Nelson's machinery would have to bring $350 and that he had settled with Nelson.

Beechley testified that when he went to Nelson's place they made a calculation as to what Nelson's indebtedness was and also estimated the value of what Nelson was willing to turn over to appellants and that what he turned over, as estimated, exceeded in value, to a small extent, the amount of his indebtedness, but says there was no understanding that appellants were to accept the property in full of the debt; that it was an estimate only. Beechley also denied that he said to McGirr that he had settled with Nelson and denies that Nelson claimed to him that there was any final settlement.

George H. McCall, who had charge of the collection department of appellants, claimed for them and testified that Beechley had no authority to make any settlement with Nelson in the manner claimed by Nelson. This claim of McCall, however, seems clearly against the preponderance of the evidence. It is admitted that Beechley sold for appellant to Nelson some of the very machinery involved in this controversy. Beechley did not testify that he had no authority to settle with Nelson, while the fact that he was there under the circumstances would suggest that he was there by authority of appellants. McCall admits in his evidence that Beechley was appellant's salesman and was authorized to solicit and assist local agents in selling, but says

he was not authorized to make settlement unless especially instructed *in writing* to do so. There is no claim made that Beechley's authority *to sell* was in writing and no good reason is made to appear why he should need authority in writing to make a settlement. He went to Nelson's in response to an invitation from Nelson to appellants to send him there to make settlement and his authority to do so cannot now be successfully denied by appellants.

Appellants next contend that McGirr was a signer upon the notes involved with Nelson and not a guarantor, as claimed by appellee. Upon the showing made, we are disposed to hold that McGirr was a guarantor only, but in view of the fact that our holding supports the jury and the trial court to the effect that there was a final settlement between Nelson and appellants through Beechley, we are not called upon to discuss the distinction that appellants urge upon that score.

Appellants also contend that there was error in the action of the court in receiving the verdict after the jury had been discharged, and in not having the same properly signed by all the jurors. There is nothing, however, in the abstract showing that the verdict was received in the absence of the jury or any of them, or that the jury had been discharged or were not in attendance upon the court when the verdict was received. The verdict was in proper form and could have been rendered orally as well as in writing. This assignment of error is without merit under the showing made.

Appellants next assign as error the refusal of the court to give for appellants certain instructions offered by them. The court gave for appellants fifteen instructions and refused twenty-three others. The court also gave for appellees four instructions. Of all these instructions so given and refused, appellants have abstracted only ten refused instructions offered by appellants and one of the four given for appellee. We are not called upon to review a partial abstract of the

instructions as the errors alleged in that respect may have been entirely harmless in view of the instructions given that are not abstracted.

The judgment is right upon the merits and is affirmed.

*Affirmed.*